### FRANK ATKINS

*v.*

### THE LACKAWANNA TRANSPORTATION COMPANY.

*Opinion filed October 16, 1899.*

1. CARRIERS—*owner of vessel owes reasonable care to person on board with his permission.* The owner of a vessel engaged in carrying merchandise owes the duty of exercising reasonable care for the safety of one coming on board at a stopping place, with his knowledge and permission, to supply drinking water to laborers on the boat, who hired him for the purpose.

2. SAME—*when owner of vessel is not liable for injuries to a person on board with his permission.* One on board a vessel, with the owner's permission, to supply drinking water to employees, who hired him for that purpose, cannot hold the owner liable for injuries received in jumping to the dock after the vessel had started, even though no warning of its movement was given, where such act was voluntarily undertaken, in the belief that it was safe.

*Atkins v. Lackawanna Transportation Co.* 79 Ill. App. 19, affirmed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding.

CHURCH, McMURDY & SHERMAN, for plaintiff in error.

D. J. & D. J. SCHUYLER, Jr., for defendant in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Plaintiff in error sued defendant in error in the superior court of Cook county for damages resulting from an injury received by him in jumping from one of defendant's boats to a dock, in the city of Chicago. A demurrer was sustained to the amended declaration and plaintiff elected to stand by it, whereupon judgment was rendered against him for costs. That judgment was affirmed in the Appellate Court for the First District, and plaintiff now prosecutes this writ of error.

The amended declaration alleges, in substance, that on the 15th day of June, 1891, the defendant, a corporation, was a common carrier of merchandise on the great lakes, operating a line of steamships thereon; that on that day one of the steamers, the "Florida," having about 2000 tons of coal aboard, had arrived at and was moored to Hedstrom's dock, in Chicago,—a wharf on the Chicago river,—and about twenty men were employed, at the instance of defendant, in unloading the coal; that plaintiff, a resident of Chicago and a minor, (seventeen years of age,) was then and there lawfully on this vessel, "with the knowledge and permission of defendant," for the purpose of supplying the men with drinking water, being employed by them for that purpose; that it was the duty of the defendant to give warning of the removal of the vessel from the dock, and to provide and maintain a means of passing from the vessel for a reasonable time after the work of unloading was finished; that when the work of unloading was finished and plaintiff was then and there preparing forthwith to leave the vessel by means of a gang-plank provided and maintained by defendant, the defendant, knowing the premises and without notice to plaintiff, and before he had a reasonable opportunity to leave the vessel, wrongfully and negligently withdrew the plank, so that plaintiff had no safe means of leaving the vessel, and forthwith began to cast off the ropes by which the vessel was moored to the dock and to move the vessel away from the dock, and plaintiff desiring to leave the vessel, "and being moved and impelled by the sudden exigency," and "believing at the time that he might safely do so," jumped to the dock and thereby sustained injuries, etc.

It is contended by counsel for plaintiff in error that the defendant in error owed to him, while on its vessel, the same degree of care that a carrier owes to passengers,—that is, the highest degree of care. Counsel for defendant in error, on the other hand, contend that the

plaintiff was on the vessel as a licensee merely, and defendant in error was liable only for a failure to observe ordinary care for his safety.   The rule relied upon by counsel for plaintiff in error, which seems to be supported by the general trend of decisions, is stated in Wood on Railway Law, (vol. 3, Minor's ed. 1894, pp. 1627, 1628,) as follows: "Where the company expressly or impliedly invites a person on its premises, it is liable to him for injuries resulting either from defective condition of premises or improper management of trains.   *   *   *   Any one who is there on business comes under the head of persons invited there." The law is generally settled that express messengers and mail clerks fall within the above rule, as do others who are employed to go upon the company's premises to transact the business of their employer in connection with the carriage of merchandise or passengers and who are not in its employ.

We think the allegations of the declaration are sufficient to bring plaintiff within the rule thus announced, the defendant bearing such a relation to him as that it was required to exercise reasonable care for his safety. (*Spry Lumber Co.* v. *Duggan, ante,* p. 218.)   Certainly there are no grounds for the contention that the relation of passenger and carrier existed between the parties so as to impose upon the defendant the highest degree of care.

On the theory that the defendant was bound to exercise ordinary care to prevent injury to the plaintiff there can be no doubt that the declaration fails to state a case, and we concur in the following views and conclusion expressed in the opinion of the Appellate Court by HORTON, J.:

"Assume, as we must, the correctness of every material allegation contained in the declaration, still no cause of action is shown.  The declaration says that the plaintiff, 'believing at the time that he might safely do so, did then and there jump from said vessel onto said dock, and thereby then and there sustained severe bodily injuries.'

This shows that the plaintiff had time to consider the situation and to exercise his judgment. He thought that he could jump to the dock without injury. As the declaration says, he was 'thereby' injured,—that is, he was injured by jumping from the vessel to the dock. That was a voluntary act on his part. This injury was wholly caused by his own deliberate act. He says that he thought he could do it safely. The result shows that he erred in judgment or that he was careless. In neither case does he establish any basis upon which to hold the defendant liable for the consequences. If the injury was the result of his own carelessness, of course it will not be contended that defendant is liable. If it was the result of his own voluntary act, through an error in judgment on his part, then the defendant is not liable.

"To meet this barrier to success, it is stated in the declaration that plaintiff, 'being moved and impelled by the sudden exigency' and believing that he might safely do so, jumped to the dock. The allegations of fact do not warrant or sustain this deduction. As a general rule, the act which results in personal injury, but which in law is justifiable, is where there is some imminent danger, real or apparent. We are not aware of any cases holding that a party may recover damages for an injury caused by his own voluntary act when there was no imminent, or apparently imminent, danger, and no specially exciting or exasperating circumstances. In the case at bar there was no apparent or probable danger to plaintiff if he had remained on the vessel. There were no specially exciting circumstances. There was nothing which should so disconcert him as to prevent or control the reasonable exercise of his judgment. He was not 'impelled' by any 'sudden exigency,' such as would justify his jumping to the wharf, 'believing at the time that he might safely do so,' and then charging the unexpected and injurious consequences to the owner of the vessel."

*Judgment affirmed.*